Hough, J.
The relator, Thomas J. Conner, seeks a writ of mandamus to compel the respondents to count in his favor seven ballots for the office of councilman of the twenty-third ward in the city of Cincinnati.
On the ballots in question the name of the relator appears in two places, namely on the democratic ticket and on the independent ticket, with a cross-mark in front of relator’s name in both places on each of the seven ballots.
The counting of these ballots would change the general result of the election, giving the relator a majority of one over his opponent. It is urged that while the voting for the same person twice by a voter is an irregularity in itself, one vote on each of the ballots should have been counted for the candidate, for the reason that the intention of the voter was clearly expressed.
With this we are in accord. The making of a cross-mark in front of the name of a candidate on the ballot is of course the expression of the intention of the voter, and the making of a cross in each place in front of a name that appears in two places on the ballot is an accentuation of that expressed intention, and' if the legal rule that the intention of the voter must prevail does not run counter to some one or more other legal rules the conclusion' naturally ob *518 tains that these ballots expressed the- intention of the voter and should be counted.
The claim is made, however, that the placing of the independent ticket upon the ballot was illegal and void, and it must be conceded that if this is true the counting or failure to count the seven ballots would in no way affect the result of the election.
The admissions in the pleadings and the stipulations of fact appearing in the record disclose that the independent ticket was placed upon the ballot by petition, and that the twenty-third ward, in which the relator was a candidate, is a ward within the municipality of Cincinnati, which city has a population of something over 400,000, and it is urged that there was no legal authority for placing this independent ticket on the ballot by petition.
It is not questioned that prior to the amendment of the constitution in 1912, the statute properly provided for and covered such case. The constitution as amended, Section 7, Article Y, so far as pertinent, provides as follows:
“All nominations for elective state, district, county and municipal officers, shall be made at direct primary elections or by petition as provided by law, and provision shall be made by law for a preferential vote for United States senator; but direct primaries shall not be held for the nomination of township officers or for the officers of municipalities of less than two thousand population, unless petitioned for by a majority of the electors of such township or municipality.”
The constitution-makers delegated to the legislature the authority, therefore, for making nominations by petition. If any part of this provision is *519 self-executing it is clear that it is not the part providing for nominations by petition. This authority is clearly consigned to the legislature.
Prior to this constitutional amendment, Section 4996, General Code, provided as follows:
“Nominations of candidates for any county, township, municipal or ward office may .be made by nomination papers, signed in the aggregate for each candidate by not less than three hundred qualified electors of the county or fifty electors of the city or twenty-five qualified electors of the township, ward or village respectively. In counties containing annual registration cities, such nomination papers shall be signed by petitioners not less in number than one for each fifty persons who voted at the next preceding general election in such county.”
Section 4999, General Code, provided for the nomination of candidates for United States senator, or for other offices. These two sections were specifically repealed by the legislature on the 10th day of April, 1913, the repealing clauses appearing in the new act at that time passed. The new Section 4996, which is the present law in force, reads as follows:
“Nominations of candidates for any elective office in any township or in any municipality which at the last preceding federal census had a population of less than two thousand may, be made by petitions, signed in the aggregate for each candidate by not less than twenty-five qualified electors of such township or village.”
In the reenactment of this section the legislature has failed to provide for the nomination of candidates by petition in municipalities having a popula *520 tion over 2,000, and we are unable to find any other provision which will apply to such cases.
Section 4999 was reenacted, and provides for nomination by petition for state, district and county officers, but clearly has no application to municipal or ward officers.
The situation then is that to the legislature has been delegated the power and authority to provide for the nomination of officers by petition in municipalities having a population of over 2,000, and in subdivisions of such municipalities, but the legislature has failed and omitted so to do. Whether this omission was inadvertently or designedly done we are unable to state.
° The relator claims to be saved by the provisions of Section 5005, G-eneral Code, which reads:
“When so filed, certificates of nomination and nomination papers shall be preserved and be open, under proper regulations, to public inspection. If in apparent conformity with the provisions of this chapter, they shall be deemed to be valid unless objection thereto is duly made in writing within five days after the filing thereof.”
Ilis claim is that this presents a question with which the courts have no power to deal; that under the doctrine laid down in State, ex rel. Buel, v. Joyce, Deputy State Supervisors, etc., 87 Ohio St., 126, and State, ex rel. Gongwer, v. Graves, Secretary of State, 90 Ohio St., 311, the act or refusal to act on the part of the supervisor of elections, is final, and in the absence of fraud, or the abuse of discretion, the courts have no jurisdiction.
We would be inclined to agree with the relator if the action of the election officials in placing the ticket *521 on the ballot had been “in apparent conformity with the provisions of this chapter,” bnt the action taken cannot be said to be in apparent conformity with the provisions of law when there are no such provisions.
Nor are we able to find that any specific provision of the constitution was invaded by the legislature when it enacted present Section 4996. This defect or omission in the election machinery is a question that should be addressed to the conscience, sound discretion, and judgment of the legislature, and not to the court. The court must take the legislative action as it is, and not transgress the prerogatives of the legislative branch of the government.
The above conclusion precludes the necessity of passing on the other questions argued. And the form of the remedy sought not having been questioned, or at least not having been seriously urged, we have not considered that question.
The relator having failed to show a clear legal right to the writ, the application therefor must be denied.

Writ denied.

Robinson, Jones, Matthias and Clark, JJ., concur.
Marshall, C. J., and Wanamaker, J., dissent.